NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

JACOB BACHER, BY HIS NEXT FRIEND, GUSSIE BACHER, AND GUSSIE BACHER, INDIVIDUALLY, PETITIONERS, v. MEYER RAFALOWITZ, RESPONDENT.

For the petitioners, *Norman L. Brundage.*

For the respondent, *Michael Breitkopf.*

\*      \*      \*      \*      \*      \*      \*

Petitioners, Jacob Bacher and Gussie Bacher, are respectively, the son and widow of Joseph Bacher, who, on and prior to October 15th, 1926, was employed by the respondent as a painter. On that date the said Joseph Bacher, while climbing a ladder, carrying a can of paint, fell from the ladder to the ground and sustained a fracture of the fourth rib on the right side and severe shock. As a result of the fall and the shock and injury occasioned thereby, pneumonia developed, resulting in his death on the 21st day of October, 1926.

At the trial, respondent endeavored to show that at the time of his fall decedent was doing work other than what he had been told to do by his employer. The following question was asked by respondent of the witness Drabyk, on cross-examination: "When you got to the building where you were working, did you hear any conversation between Rafalowitz and Bacher?" Counsel for petitioner objected to the question on the ground that it was hearsay. I advised that I would admit the question subject to it being stricken out if I later determined that it was improper. I have decided that the question was proper. It appears that petitioner's husband was told by respondent to do some varnishing work in the interior of the house in question; that he went inside immediately upon his arrival at the house on the morning in question and remained therein for some time. Drabyk, a fellow-employe, who was called by respondent, testified that shortly after his arrival at work on the morning in question he went upon the roof and started to work, staining the roof, and that Bacher went inside the building. Drabyk had finished about one-third of the work when Bacher came upon the roof and began to assist in staining the roof. The testimony is not clear or satisfying as to just what varnishing work Bacher was supposed to do, nor how long it would take to complete the particular work he was supposed to do. We may infer from the testimony that Bacher had done some varnishing in the interior of the house on the morning in question. It should be observed that none of the witnesses

can say how much varnish was available at the house on the day in question.

According to the witnesses Bazan and Sedgwick, the varnish work in the interior of the house had been completed prior to the accident. These witnesses were disinterested and appeared to me to be telling the truth. Under the circumstances, Rafalowitz can hardly be said to be a disinterested witness. It is significant that after the accident Rafalowitz went to Bazan and directed him to go upon the roof and assist Drabyk in completing the staining of the roof, and further instructed Bazan to stay on the job until the roofs of the four houses were all occupied.

Rafalowitz would like it to be believed that he instructed Bacher not to go upon the roof. There was no corroboration of this, although the witness Drabyk was present and heard the order given to Bacher by the respondent. In my opinion, this is an afterthought conceived by Rafalowitz. I am of the opinion that no such instruction was given to the decedent and I do so find. If there was any varnishing work to be done in the interior of the house, on the morning in question, it would probably be to touch up that which had been done and was such as would not take much time. Upon a careful consideration of the whole case, I have concluded that decedent was not acting in disobedience of respondent's orders at the time of the accident, and that decedent was acting within the scope of his employment at that time. I do therefore find that the accident arose out of and in the course of the employment.

\*    \*    \*    \*    \*    \*    \*

CHARLES E. CORBIN,
*Deputy Commissioner.*